# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

SAMUEL ROSS,                              )
                                          )
                    Plaintiff,            )
                                          )
vs.                                       )    Case No.   14-cv-574-MJR-SCW
                                          )
MICHAEL P. ATCHISON, LT.                  )
MITCHELL, TIMOTHY R. VEATH, MR.           )
HENRY, and VICKIE PAYNE,                  )
                                          )
                    Defendants.           )

## REPORT AND RECOMMENDATION

WILLIAMS, Magistrate Judge:

### INTRODUCTION

This case is before the Court on a Motion for Summary Judgment (Docs. 29 and 30) filed by Defendants Michael Atchison, Sean Henry, Craig Mitchell, and Timothy Veath. Defendant Vickie Payne joined in the motion for summary judgment by oral motion at the June 15, 2015 hearing (Doc. 54). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **FIND AS MOOT** Defendants' motions for summary judgment (Docs. 29 and 30) and instead **DISMISS** Plaintiff's claims **with prejudice** for falsifying documents.

### FINDINGS OF FACT

#### A. Procedural and Factual Background

Plaintiff, an inmate at Menard Correctional Center, filed his Complaint May 20, 2014 alleging that staff at Menard Correctional Center failed to protect him from an assault by two inmates which

occurred on May 24, 2012.   Plaintiff also alleges that Defendant Timothy Veath conducted an unfair disciplinary hearing in violation of his due process rights.

As narrowed by the Court's threshold order, Plaintiff's complaint alleges that he was assaulted by two inmates in the yard on May 24, 2012 (Doc. 6, p. 3).   Plaintiff allegedly was locked in a chokehold by one inmate while the second inmate hit him in the face with a shank causing him to lose consciousness.   Plaintiff was transferred to the health care unit and then to Memorial Hospital for treatment (*Id.*).

Prior to the assault, Plaintiff alleges that he repeatedly asked to be placed in protective custody for weeks prior to the incident (Doc. 6, p. 3).   Plaintiff claims that he submitted both written and oral requests to Defendants Michael Atchison, Craig Mitchell, Sean Henry, and Vickie Payne.   But Plaintiff alleges that none of the defendants took reasonable steps to prevent the assault (*Id.*).

Plaintiff's complaint also alleges that Defendant Veath conducted an unfair disciplinary hearing on June 12, 2012 (Doc. 6, p. 3).   After Plaintiff again requested placement in protective custody, Plaintiff alleges that he was placed in segregation and that he was issued a disciplinary ticket for impeding or interfering with an investigation and giving false information (*Id.* at p. 3-4).   Plaintiff alleges that he was not provided a copy of the disciplinary report prior to his hearing and at the hearing he was prohibited from speaking, calling witnesses, or asking questions (*Id.* at p. 4).   Plaintiff was ultimately found guilty of the infraction and sentenced to one year segregation, C grade, and commissary restrictions, which was later reduced to seven month segregation, nine months C grade, and commissary restrictions (*Id.*).

In response to Plaintiff's complaint, Defendants filed the pending motion for summary judgment, arguing that Plaintiff had failed to exhaust his administrative remedies as to his two claims

(Docs. 29 and 30).[1]   Defendants point to three grievances that Plaintiff submitted that were related to Plaintiff's two claims.   The first grievance was dated June 19, 2012 and dealt with the disciplinary report that Plaintiff received on May 24, 2012 (Doc. 30-6, p. 15-17). The grievance was received by the ARB on January 23, 2013 and was returned to Plaintiff as filed outside the timeframe allowed for grieving (Doc. 30-6, p. 15, 1).   The document also lacked responses from Plaintiff's counselor, grievance officer, and chief administrative officer (Doc. 30-6, p. 1).   Along with the June 19, 2012 grievance submitted to the ARB, Plaintiff also submitted a grievance dated June 21, 2012 (Doc. 30-6, p. 11).   This grievance discussed the assault which occurred on May 24, 2012 and alleged that he informed numerous individuals, including psych doctors, counselors, internal affairs officers, lieutenants, and sergeants, as well as filed emergency grievances prior to the assault requesting to be placed in protective custody, but all of the individuals ignored his requests (*Id.* at p. 11-12).   This grievance was also returned by the ARB as untimely (Doc. 30-65, p. 1).   Defendants argued that neither of these grievances was fully exhausted because he did not receive responses at the institutional level and did not submit the grievances until January 2013, well outside the time period for submitting grievances on these two issues.

Defendants pointed out that Plaintiff also submitted a grievance dated June 25, 2012 about protective custody directly to the ARB (Doc. 30-4).   This grievance also indicated that he had sought protective custody from numerous personnel, including sending emergency grievances to the warden, and writing letters to his counselor, lieutenants, officers, mental health staff, and internal affairs officers, but that none of them would help him (Doc. 30-4, p. 2-3).   Plaintiff's grievance also points out that he was ultimately assaulted on May 24, 2012 (Id. at p. 3).   This grievance was received by the ARB on July 2, 2012, but denied Plaintiff's grievance as moot because no action could be taken on a

---

[1] Defendant Vickie Payne later joined in Defendants' motion for summary judgment.

protective custody request while Plaintiff was in segregation and Plaintiff was not due to be released from segregation until January 2013 (Doc. 30-4, p. 1).

Defendants argued that Plaintiff's June 25, 2012 grievance failed to exhaust his administrative remedies as to his failure to protect claim because it did not properly identify Defendants Atchison, Henry, Payne, and Mitchell and thus did not put the institution on notice that Plaintiff was grieving issues with them. Defendants also pointed out that Plaintiff's grievance was returned on administrative grounds and that they did not issue a ruling on the merits of his grievance because no action could be taken in regards to Plaintiff's protective custody request while he was in segregation (Doc. 30-4). Plaintiff was instead instructed to submit his protective custody request prior to his release from segregation in January.

Plaintiff filed a response to Defendants' motion for summary judgment, arguing that he did all that he could to exhaust his administrative remedies. Plaintiff argued that he submitted his June 19, 2012 grievance regarding a disciplinary ticket directly to grievance officer Lori Oakley and he filed his June 21, 2012 grievance with counselor Angela Grott (Doc. 39, p. 13). Plaintiff alleged that after waiting several weeks, he inquired as to the status of his June 21, 2012 grievance on August 9, 2012 and that Grott responded that it had been returned on June 21, 2012 as it was a copy and not the original grievance (Doc. 39-1, p. 14; 39, p. 13). Plaintiff claims he again inquired about the grievance because he did not receive it back from her and she responded that she had no record of receiving grievances from Plaintiff (Doc. 39-1, p. 18; 39, p. 13). The undersigned notes, however, that response from Grott was dated June 26, 2012, prior to his request to Grott on August 9, 2012 (*Id.* at pp. 18, 14). Plaintiff claims that Grott also told him on August 14, 2012 that a grievance dated June 19, 2012 was returned to him as it was a copy (Doc. 39-1, p. 16). Plaintiff claims that after these responses from Grott, he forwarded his grievances to grievance officer Lori Oakley and that he received a response to

the June 19, 2012 grievance on August 22, 2012 but did not receive a response to the June 21, 2012 grievance (Doc. 39, p. 14; 39-1, p. 32).   Plaintiff claimed that he then sent both grievances to the ARB. He also claimed he sent his June 25, 2012 grievance directly to the ARB as is allowed by the rules. Plaintiff claimed that he did all that he could to exhaust his administrative remedies.

### B.  Pavey Hearing

As the undersigned found there to be a dispute of fact over whether Plaintiff properly exhausted his administrative remedies, the Court held a hearing on June 15, 2015 pursuant to *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).**

#### 1.  *Plaintiff's Testimony*

At the hearing Plaintiff first testified about his grievances.   Plaintiff acknowledged that he understood the grievance process and that the grievance had to be submitted to the counselor and then the grievance officer before being appealed to the ARB.   As to the June 19, 2012 grievance Plaintiff testified that he wrote the grievance on June 19, 2012 and sent the grievance to his grievance officer around that time as it dealt with a disciplinary report and hearing.   But in the summary of Plaintiff's grievance, Plaintiff stated that he appeared before the adjustment committee on June 12, 2012 and that he received the adjustment committee's final report on July 9, 2012, after the date he supposedly wrote the grievance (Doc. 30-6, p. 15).   Counsel for Defendants also directed Plaintiff to another grievance he wrote on July 19, 2012 (Defendant's Exhibit 1).   That grievance was word for word the same as the grievance Plaintiff dated June 19, 2012 and also stated that he received the final summary report from the adjustment committee on July 9, 2012 (*Id*).

Plaintiff was also questioned about his June 21, 2012 grievance (Doc. 30-6, p. 13).   In that grievance he did not name any specific defendant by name because he had only been at Menard for three months and did not know anyone's names.   Instead, Plaintiff testified that he identified them by

their positions to the best of his abilities.   He submitted the grievance to his counselor but never received a response, so he sent the grievance to the grievance officer and also never received a response.   The ARB ultimately received a copy of the grievance on January 23, 2013, but Plaintiff testified that he did not submit the grievance on January 23, 2013 as an appeal but rather as part of a package of exhibits to his supplement his hearing before the ARB on his request for protective custody.   Plaintiff acknowledged that his counselor responded to him on August 9, 2012 indicating that the grievance he submitted was a copy and not the original (Doc. 1, p. 48) but he testified that he sent her both the copy and original.   He also testified that he submitted both the June 21, 2012 and June 19, 2012 grievance to the ARB together in August 2012 but never received a response.   Plaintiff testified that the money voucher attached to his complaint (Doc. 1, p. 46) is evidence that he submitted the grievances to the ARB in August 2012.[2]   Plaintiff testified that he then sent the two grievances again in January to the ARB as an exhibit to his protective custody request, but Terri Anderson at the ARB treated them as an appeal instead of exhibits.

Plaintiff also responded to questioning regarding his June 25, 2012 grievance (Doc. 30-4). Plaintiff testified that he sent the grievance directly to the ARB as it was regarding protective custody. While Plaintiff did not identify any of the Defendants by name, he claimed that he referenced Atchison by stating that he filed an emergency grievance.   He also testified that he identified Mitchell when he said he wrote letters to the counselor, lieutenants, officers, mental health staff, and internal affairs. Plaintiff acknowledged that Mitchell was a cellhouse lieutenant but he just identified lieutenants in general.   Similarly, Plaintiff identified Henry and Payne by stating that he had requested protective custody from internal affairs and his counselor as Henry was an internal affairs officer and Payne was

---

[2]  Plaintiff also sought to provide a copy of his trust fund statement that he testified at the hearing would also evidence his submission to the ARB in August.   Plaintiff was given five days to submit the statement, but failed to do so.   Based on the Court's recommendation for dismissal due to the Plaintiff's falsification of documents, the Court concludes that the trust fund statement would have no impact on its decision.

his counselor.

### 2. *Angela Grott*

Angela Grott, a correctional counselor at Menard Correctional Center testified as to her involvement with Plaintiff's grievances.  Grott testified that on August 6, 2012, the cumulative counseling summary (Defendant's Exhibit 2) indicates that a grievance dated June 19, 2012 was returned to Plaintiff as a copy with an indication that Plaintiff had to provide the counselor with an original of his grievance, not a copy (Defendant's Exhibit 2, p. DEF000051).  On August 9, 2012, Grott responded to Plaintiff's request for a copy of a final summary and informed Plaintiff that a grievance dated June 21, 2012 had also been returned to him as being a copy and that she had no other grievances in her possession (*Id.*).  While Grott testified that submitting a copy of a grievance to the counselor would not constitute a proper grievance, she later clarified that at the time she received Plaintiff's grievances she believed that a copy was not acceptable because that is how she was trained. She was told by another counselor that she could not answer a copy of a grievance, rather an inmate had to submit an original of his grievance.  She later learned from the grievance officer that she could accept copies of grievances.  On June 26, 2012, Grott also informed Plaintiff that she had no record of any grievances from Plaintiff (Defendant's Exhibit 2, p. DEF000052).  Although Grott responded to Plaintiff on August 9, 2012 and August 14, 2012, informing him that his grievances had been returned, she did not send the grievances back to him on that date.  She was just responding to his request regarding his grievances and referred to earlier notations where grievances had been returned. She also did not know when those grievances were received by the counselors.

### 3. *Lori Oakley*

Lori Oakley also testified about her role in the grievance process.  Oakley testified that in March 2012, she was appointed as grievance officer for Menard.  Pointing to the grievance log,

Oakley noted no grievances were received from Plaintiff in June 2012 (Defendant's Exhibit 3). She did receive a grievance from Plaintiff which she received on July 27, 2012. The grievance was coded as regarding a disciplinary report and thus was submitted directly to the grievance officer. The grievance was dated July 19, 2012 and was returned on August 22, 2012.

Oakley also testified that while she has received complaints and grievances from inmates indicating that their grievances were being improperly thrown away, she has never been able to substantiate those claims. She has never been able to substantiate that grievances on staff are thrown away and she has, in fact, received numerous grievances against staff. Oakley testified that an inmate does not have to file a grievance on protective custody issues directly with the ARB as when an inmate is denied protective custody there is a box on the form for him to check in order to automatically appeal the request to the ARB. She acknowledged that the inmate handbook indicated that protective custody issues were exempt from the local rules regarding grievances but believed that meant that they did not have to file a formal grievance to the ARB.

### 4. Vickie Wood (Payne)

Next, Vickie Wood (formerly known as Vickie Payne and a defendant in this case) testified. Wood testified that she was a correctional counselor 2 and served as Plaintiff's counselor in the past. She testified that she never told Plaintiff that she threw grievances away and did not recall any specific conversations with Plaintiff in 2012.

### CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed

by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler***, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson***, 362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry***, 286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole***, 438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley***, 544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be

> given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.  (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### B.  Exhaustion Requirements Under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims.  **20 Ill. Administrative Code §504.800 *et seq.***  The grievance procedures first require inmates to speak with the counselor about their complaint.  **20 Ill. Admin. Code §504.810(a).**  Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.  *Id.*  The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.  The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).**  "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances."  **20 Ill. Admin. Code §504.830(d).**  If the inmate is not satisfied with the Chief Administrative Officer's response, he or

she can file an appeal with the Director through the Administrative Review Board ("ARB").   The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.   Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."   **20 Ill. Admin. Code §504.850(a).**   "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations."   **20 Ill. Admin. Code §504.850(e).**   "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.   The offender shall be sent a copy of the Director's decision."   **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance.   In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis.   **20 Ill. Admin. Code §504.840(a).**   If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance.   **20 Ill. Admin. Code §504.840(b).**   Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis.   **20 Ill. Admin. Code §504.850(g).**

### C. Analysis

#### 1. *June 19, 2012 Grievance*

Plaintiff's June 19, 2012 grievance focuses on the disciplinary report that was issued on May 24, 2012 and Plaintiff claims that he tried to exhaust the grievance by sending it directly to the grievance officer, as is required when submitting a grievance regarding disciplinary actions, but that once he received a response from the grievance officer and submitted it the ARB, Plaintiff never received a response from the ARB.   The undersigned finds that Plaintiff's testimony lacks credibility as there is a glaring issue with Plaintiff's June 19, 2012 grievance: it has clearly been backdated.   The grievance indicates that Plaintiff received a disciplinary report on May 24, 2012, that he went before the adjustment committee on June 12, 2012 and that he received the adjustment committee's final summary report on *July 9, 2012*.   But Plaintiff could not have received the report on *July 9, 2012*, and then submitted his grievance to the grievance officer, as he testified, on *June 19, 2012*.   If Plaintiff submitted his grievance on June 19, 2012, as he testified, he would not have yet received his final summary report as he stated in his grievance because that was not received until July 9, 2012.   Thus, Plaintiff clearly backdated his grievance to June 19, 2012.

This backdating is also supported by other evidence in the record.   The grievance logs do not indicate that a June 19, 2012 grievance was received by the grievance officer.   Instead, the logs indicate that a grievance dated July 19, 2012 was received by the grievance office on July 27, 2012 and denied on August 21, 2012 (Defendant's Exhibit 3, p. DEF 000021).   The July 19, 2012 grievance is identical to the grievance dated June 19, 2012, and states that Plaintiff received a copy of his final summary report on July 9, 2012.   While Plaintiff testified that he received a response to the June 19, 2012 grievance from the grievance officer, that response (Doc. 1, p. 42) is clearly the grievance officer's response to the July 19, 2012 grievance as both the log (Defendant's Exhibit 3, p.

DEF000021) and the response (Doc. 1, p. 42) indicate that the grievance was received on July 27, 2012.

While Plaintiff also testified that his June 19, 2012 grievance was returned to him as a copy by the counselor, indicating that he submitted a June 19, 2012 grievance, there is no indication in the record when that grievance was received. The cumulative counseling summary indicates that a grievance dated July 19, 2012 was returned on August 6, 2012 (Defendant's Exhibit 2, p. DEF000051) but there is no indication in that record when it was received. Given the date that it was returned, it was most likely submitted sometime in July and backdated with the June 19, 2012 date, after Plaintiff received the final summary report on July 9, 2012 given that Plaintiff discusses the report in the grievance, and not on June 19, 2012 as indicated on the grievance and Plaintiff testified to. While Plaintiff stated he could have gotten some of the dates confused, it is clear from his later filed grievance and the response that the final summary report was submitted on July 9, 2012, meaning that Plaintiff clearly backdated the grievance and did not submit it on June 19, 2012 even though he continued to testify that he did submit the grievance on June 19, 2012. Further, Plaintiff testified that he submitted the grievance to the grievance officer and the grievance returned on August 6, 2012 was submitted to the counselor.

It is clear from the grievances, logs, and counseling summary in the record, that Plaintiff did not submit the grievance dated June 19, 2012 in June as he testified. Plaintiff clearly backdated the grievance, given that he discussed the final summary report that he did not receive until July 9, 2012. Further, his grievance was not returned to the counselor until August 6, 2012, indicating that he did not submit it until sometime after he received the summary report. There is also no evidence that he submitted the grievance to the ARB as he testified. Plaintiff testified that he submitted both the June 19, 2012 and June 21, 2012 grievance to the ARB together in August 2012 but the ARB has no record

of the grievances.   Those grievances were not received until January 2013, and only as exhibits to his protective custody request, as Plaintiff testified (Doc. 30-6).   While Plaintiff offered money vouchers that he obtained in August as proof he submitted the grievance (Doc. 1, p. 46), the voucher only indicates that it was for postage.   The voucher does not indicate what documents were sent or where those documents were sent, so there is no evidence that the documents were his grievances and that he submitted them to the ARB.   Given that Plaintiff lied about his June 19, 2012 grievance and when he submitted that grievance, the undersigned finds his testimony regarding his submissions to the ARB to lack credibility.   Thus, the undersigned finds that Plaintiff failed to exhaust his administrative remedies as to the June 19, 2012 grievance as there is no evidence that he properly submitted the grievance through the exhaustion process.

### 2. *Sanctions*

In addition to finding that Plaintiff failed to exhaust his administrative remedies as to the June 19, 2012 grievance, the undersigned also **RECOMMENDS** that the Court sanction Plaintiff for lying to the Court.   Plaintiff clearly lied, both to the undersigned at the hearing and in his submissions to the Court, as he clearly backdated the June 19, 2012 grievance and testified that the grievance was indeed submitted on June 19, 2012 when it clearly was not.   The Court does not "tolerate deception from litigations." ***Neal v. LaRiva***, 765 **F.3d** 788, 790 (7th Cir. 2014).   Further, the Seventh Circuit has indicated that dismissal is a proper sanction for lying to the Court. ***Rivera v. Drake***, 767 **F.3d** 685, 686-87 (7th Cir. 2014) (citing ***Haskins v. Dart***, 633 F.3d 541, 544 (7th Cir. 2011); ***Ridge Chrysler Jeep, LLC v. DaimlerChrysler Financial Services Americas LLC***, 516 F.3d 623, 626-27 (7th Cir. 2008); ***Greviskes v. Universities Research Association, Inc.***, 417 F.3d 752, 759 (7th Cir. 2005); ***Thomas v. General Motors Acceptance Corp.***, 288 F.3d 305, 308 (7th Cir. 2002)). Given that the Plaintiff has lied to this Court and provided the Court with false documents, the

undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's claims **with prejudice**, in its entirety, for lying to the Court.

### 3. *June 21, 2012 Grievance and June 25, 2012 Grievance*

Although the undersigned recommends that Plaintiff's claims be dismissed as a sanction for deceiving the Court, the undersigned will analyze Plaintiff's two remaining grievances should the Court, in the alternative, choose to rule on Plaintiff's exhaustion efforts rather than on his deception.

Plaintiff's June 21, 2012 grievance deals with the assault which occurred on May 24, 2012 (Doc. 30-6, p. 11).  The grievance complains that numerous staff at Menard ignored his requests for protection.  He claims that he notified internal affairs, sent two emergency grievances, talked with a psych doctor, and spoke with several officers, lieutenants, sergeants, and his counselor requesting protective custody and all ignored his requests for protection (*Id.*).  Plaintiff testified that he submitted the grievance on June 21, 2012.  The grievance indicates that it was received on July 26, 2012 (*Id.*) and the cumulative counseling summary indicates that the June 21, 2012 grievance was returned to Plaintiff for being a copy and not the original (Defendant's Exhibit 2, p. DEF000051).  Although the counselor acknowledged that returning the grievance for being a copy was inappropriate as counselors can receive copies, there is no indication in the record that Plaintiff did anything further with the grievance.  There is no indication that Plaintiff submitted the original grievance to the counselor or appealed the grievance to his grievance officer.

Plaintiff testified that he never received a response to the grievance from his counselor and that he submitted the grievance to the grievance officer.  There is no evidence in the record that he submitted the grievance to the grievance officer (Defendant's Exhibit 3) and the cumulative counseling summary shows that the grievance was returned to Plaintiff (Defendant's Exhibit 2, p. DEF000051).  Plaintiff also testified that he forwarded the grievance, along with the June 19, 2012

grievance to the ARB in August, but as the undersigned previously stated with regards to the June 19, 2012 grievance, the undersigned finds Plaintiff's testimony to lack credibility and the evidence he offered in the form of money vouchers do not specifically indicate that the money was used for postage of these documents to the ARB. Given that Plaintiff has previously lied to the Court, the undersigned finds his testimony that he pursued his grievance through the grievance officer and the ARB to lack credibility.

Although Plaintiff argues that he was thwarted in his attempts to file his June 21, 2012 grievance, the undersigned does not find that the return of his grievance to thwart his efforts. The undersigned acknowledges that the return of his grievance because it was a copy was inappropriate, as Plaintiff's counselor Angela Grott admitted that she was incorrect in refusing to accept a copy of a grievance. But the return of the grievance did not thwart Plaintiff's efforts to exhaust. Plaintiff could have treated the return of the grievance as a response, in which case he was required to appeal the grievance to the grievance officer, or he could have provided an original of his grievance to the counselor. Plaintiff's testimony that he submitted the grievance to the grievance officer lacks credibility, so the evidence suggests that Plaintiff pursued neither of these avenues. As he failed to pursue his grievance past the counselor, the undersigned finds that Plaintiff failed to exhaust his administrative remedies.

As to the June 25, 2012 grievance, the undersigned finds that it was properly exhausted with the ARB. That grievance (Doc. 30-4, p. 2-3) grieved his request for protective custody, stating that he has been seeking protective custody from March 2012 with no success. Plaintiff indicated that he filed emergency grievances to the warden, wrote his counselor, lieutenants, officers, mental health staff, and internal affairs officers and none of them helped protect him (*Id.*). Plaintiff submitted the grievance directly to the ARB, as is allowed with grievances regarding protective custody, and it was

received on July 2, 2012 (*Id.*).  See **20 Ill. Admin. Code 504.870(a)(1).**  While the ARB initially denied the grievance as no action could be taken with Plaintiff being in segregation at the time, the ARB directed Plaintiff to resubmit his request prior to his release from segregation (Doc. 30-4, p.1). He did and the ARB held a hearing on January 16, 2013 on his protective custody grievance (Doc. 30-5).  Thus, the undersigned finds that Plaintiff fully exhausted his June 25, 2012 grievance.

The only issue as to the June 25, 2012 grievance is whether Plaintiff properly identified Defendants Atchison, Mitchell, Henry, and Payne.  The Illinois Department of Correction's Grievance Procedures specifically states that an inmate must name, or at the very least, describe the person who is the subject of the grievance.   **20 Ill. Admin. Code § 504.810(a).**  This requirement meets with the purpose of the grievance procedure which is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, **418 F.3d 714, 719 (7th Cir. 2005).**  Here, the undersigned finds that Plaintiff properly identified Payne and Henry because he stated in the grievance that he spoke with an internal affairs officer (Henry) and his counselor (Payne).  Although, he did not specifically name Henry and Payne, his identification of their positions at Menard was enough information to put the prison on notice as to who he talked to about his concerns.  Further, Plaintiff stated in his grievance that he filed emergency grievances with the warden about his security concerns. This is enough to put the ARB on notice that Plaintiff sought help from the warden to no effect.

However, the undersigned finds that Plaintiff did not properly identify Mitchell in his grievance.  Plaintiff's June 25, 2012 grievance says that he spoke to lieutenants and officers.  He does not indicate what officers or lieutenants he spoke to, nor does he identify where those officials were located.  There are numerous lieutenants and Defendant Mitchell is one cellhouse lieutenant.  There is no indication from the grievance that he spoke to Defendant Mitchell about protective custody.

Accordingly, if the Court decides not to dismiss Plaintiff's case for his falsehoods, the undersigned finds that Plaintiff exhausted his administrative remedies only as to Defendants Henry, Payne, and Atchison on his failure to protect claim.   All other claims and defendants should be dismissed for failure to properly exhaust his administrative remedies.

## CONCLUSIONS AND RECOMMENDATIONS

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff lied to the Court and **DISMISS with prejudice** his claims against Defendants.   Should the Court **ADOPT** this Report and Recommendation, there will be no claims remaining.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.   *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **July 10, 2015.**

**IT IS SO ORDERED**.
DATED: June 23, 2015.

/s/ Stephen C. Williams
STEPHEN C. WILLIAMS
United States Magistrate Judge